IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

HELEN RAMSEY,

    **Plaintiff,**

v.                                                      **Civil Action No. 3:15cv165**

BRANCH BANKING & TRUST COMPANY, *et al.*,

    **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Branch Banking & Trust Company's ("BB&T") Motion to Dismiss Plaintiff's First Amended Complaint (the "Second Motion to Dismiss"), (ECF No. 16), for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Plaintiff Helen Ramsey has responded, (ECF Nos. 18, 19), and BB&T has replied, (ECF No. 20). This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332.[1] For the reasons that follow, the Court will grant BB&T's Second Motion to Dismiss.

### I. Motion to Dismiss for Failure to State a Claim Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356

---

[1] The parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1).

(1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those that "show" a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 570; Fed. R. Civ. P. 8(a)(2)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citations omitted).

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under

Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citing *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Gasner v. Cty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

Ramsey incorporates by reference four documents attached to her Complaint,[2] and she attaches to her First Amended Complaint a "Mortgage Loan Coupon Book," (First Am. Compl. Ex. E, ECF No. 15-1). The Court will consider these documents because they are central to the claims, are sufficiently referred to in the First Amended Complaint, and neither party contests their authenticity. *See Witthohn*, 164 F. App'x at 396–97 (citations omitted).

---

[2] The four documents are: (1) Exhibit A: the January 5, 2006 General Warranty Deed of Sale conveyed by John and Katherine Marsh (collectively, "the Sellers") to Helen Ramsey; (2) Exhibit B: the January 6, 2006 Deed of Trust; (3) Exhibit C: the Appraisal Report; and, (4) Exhibit D: the November 24, 2009 Modification Agreement between Ramsey and BB&T.

3

## II. Factual and Procedural Background[3]

### A. Summary of Allegations in the Complaint[4]

On December 13, 2005, Ramsey signed a sales contract with the Sellers to purchase real property located at 7101 Old Dickersons Road in Spotsylvania County, Virginia ("the Property"). The Property "was listed and described as a one (1) bedroom house." (First Am. Compl. ¶ 15, ECF No. 15.) The sales contract listed a $220,000 purchase price. On December 19, 2005, Ramsey applied for a mortgage loan with BB&T in the amount of $209,000. During this process, BB&T loan officer Susan Cadow told Ramsey that BB&T "could not approve her for a loan for a one (1) bedroom home." (*Id.* ¶ 23.) Following a private conversation between Cadow and Jimmy Hedge, a brokerage firm representative from Remax Supercenter, BB&T approved Ramsey for a $209,000 mortgage loan. Ramsey believed BB&T approved her for a mortgage loan for a one-bedroom home. Cadow, however, did not specifically inform Ramsey "that she had qualified and been approved for a mortgage loan for a one (1) bedroom house." (*Id.* ¶ 29.)

On January 5, 2006, Ramsey and the Sellers closed the sale. Ramsey did not receive a copy of an appraisal report prior to or during closing. On January 6, 2006, Ramsey executed a Deed of Trust "and possibly a promissory note" that gave BB&T an interest in the Property. (*Id.* ¶ 33; Compl. Ex. B, ECF No. 1-2.)

---

[3] The Court assumes familiarity with the factual and procedural background of this case. This Court previously granted BB&T's Motion to Dismiss Ramsey's Complaint and dismissed Counts I, II, III, and IV with prejudice. The Court, however, granted Ramsey leave to amend Count V. The First Amended Complaint alleges that remaining claim: "Fraud."

[4] For purposes of the motion to dismiss, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Plaintiff. *Matkari*, 7 F.3d at 1134.

4

In approximately January or February 2009, three years after closing, Ramsey sought to refinance her mortgage and obtain lower insurance coverage or sell the Property. During this process, Ramsey learned the Property was identified as a two-bedroom property. Ramsey requested, and BB&T ultimately provided, at least a partial copy of the appraisal report. The appraisal report indicates A+ Appraisals, Inc. completed the appraisal on approximately December 30, 2005, and identified the Property as a two-bedroom property with an appraised market value of $220,000.

In March 2009, a fire destroyed the Property, and Ramsey made a claim with her insurance carrier, State Farm. State Farm "refused to pay [Ramsey] a claim for a two (2) bedroom property" and instead paid her $157,566, "the replacement cash value for a one (1) bedroom property." (First Am. Compl. ¶¶ 53–55.)

Ramsey applied the insurance proceeds to her BB&T mortgage loan. Although Ramsey "believed that the [insurance proceeds] should have completely satisfied the mortgage loan," "BB&T claimed that [Ramsey] still owed approximately [$42,900.31]." (*Id.* ¶¶ 57, 60.) Ramsey contends the mortgage loan for a two-bedroom home would have been higher than the loan for a one-bedroom home.

In late 2009, "BB&T forced [Ramsey] to sign a Modification Agreement" to her Deed of Trust. (*Id.* ¶ 62.) The Modification Agreement stated that, beginning March 1, 2010, Ramsey owed a monthly mortgage payment of $281.87.

Ramsey contends the appraisal of the Property as a two-bedroom home, rather than a one-bedroom home, resulted in an appraised market value "likely tens of thousands of dollars greater than the actual market value" of the Property. (*Id.* ¶ 65.) Additionally, Ramsey "believes that the fair market value of the [P]roperty, if it would have been properly appraised as a one (1)

bedroom property in December of 2005, would have been less than the $157,566.00 payment that [Ramsey] received from State Farm." (*Id.* ¶ 68.)

Prior to purchasing the Property, Ramsey did not know, and BB&T did not inform her of, the Property's appraised value or its appraisal as a two-bedroom home. Ramsey has paid over $230,000 to BB&T since January 2006 based upon the belief that BB&T is lawfully entitled to receive and collect these payments. BB&T has represented to Ramsey that its collection of the payments is lawful. About once a year, a BB&T representative delivers to Ramsey BB&T's Mortgage Loan Coupon Book, which reflects the mortgage loan allegedly owed. As summarized in the First Amended Complaint, the Mortgage Loan Coupon Book states that BB&T "will foreclose on [Ramsey's] property, assess late charges, and/or take other action adverse to [Ramsey's] interests, if [Ramsey] does not continue to make the monthly payments to [BB&T]." (*Id.* ¶ 90.) As a result of these representations, Ramsey continues to make monthly payments to BB&T.

### B. Procedural History

Ramsey filed a Complaint in the Circuit Court for the County of Spotsylvania, Virginia, (Compl., Ex. A, ECF No. 1-1), alleging five state law claims in connection with the December 2005 and January 2006 purchase of the Property.[5] The Complaint sought declaratory relief, compensatory damages "expected to be in excess" of $200,000, and punitive damages of at least

---

[5] Ramsey's Complaint alleged the following claims: (1) Count I: BB&T is not the lawful owner and holder of the Note and therefore lacks authorization to enforce the Note, including collecting payments, (Compl. ¶¶ 117–120); (2) Count II: BB&T violated state law by failing to furnish a copy of the written appraisal report to Ramsey prior to her purchase of the Property, (*id.* at ¶ 139); (3) Count III: breach of contract, (*id.* at ¶ 143(a)–(g)); (4) Count IV: fraud (*id.* at ¶ 148(a)–(p)); and, (5) Count V: continuing fraud, (*id.* at ¶ 157(a)–(o)).

6

$300,000. (Compl. ¶¶ 31–32.) BB&T removed this action to this Court on the grounds of diversity jurisdiction.[6]

BB&T then filed its Motion to Dismiss, (ECF No. 3), contending that Ramsey's allegations failed to state claims for relief and that Virginia's statutes of limitations barred her claims. The Court dismissed Counts I, II, III, IV, and V. The Court granted leave to amend Count V, but denied leave to amend Counts I through IV because amendment would be futile. The Court dismissed those claims with prejudice. Ramsey filed her First Amended Complaint, alleging only "Fraud." (First Am. Compl. ¶¶ 114–124.)

BB&T subsequently filed its Second Motion to Dismiss, contending that Ramsey's fraud claim is facially barred by Virginia's two-year statute of limitations. (ECF No. 16.) BB&T's argument persuades. The Court will dismiss Ramsey's First Amended Complaint for the reasons more fully explained below.

### III. Analysis

Following this Court's Memorandum Opinion and Order dismissing her Complaint, Ramsey filed her First Amended Complaint with leave of Court, alleging only a fraud claim.[7] Although Ramsey first became aware of the alleged fraud in 2009, she asserts that at least some of her allegations survive because BB&T's fraud was "continuous." By merely invoking a so-

---

[6] On March 26, 2015, BB&T filed an Amended Notice of Removal. (ECF No. 5.) The Amended Notice of Removal further describes the citizenship of BB&T. (Am. Not. Removal ¶ 11.)

[7] Federal Rule of Civil Procedure 9(b), applicable to fraud claims, requires that plaintiffs plead "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citation omitted) (internal quotation marks omitted); Fed R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

called continuing fraud claim, Ramsey does not state a claim upon which relief can be granted. For the reasons stated below, the Court will dismiss Ramsey's First Amended Complaint.

### A. Ramsey's Earlier Fraud Claims Fail to State a Claim

Even though BB&T anchors its Second Motion to Dismiss in a statute-of-limitations defense, Ramsey fails to explicitly address the applicable statute of limitations in her opposition brief.[8] Instead, Ramsey submits that the First Amended Complaint advances a continuing fraud claim. Before addressing the viability of Ramsey's continuing fraud theory, the Court will address BB&T's statute-of-limitations defense.

#### 1. Statute of Limitations Analysis at the Rule 12(b)(6) Stage

"[W]here the facts as alleged in the complaint are sufficient to rule on a statute of limitations affirmative defense, the Court may reach this defense 'by a motion to dismiss filed under Rule 12(b)(6).'" *XL Specialty Ins. Co. v. Truland*, No. 1:14cv1058, (2015 WL 925582, at *5 (E.D. Va. Mar. 3, 2015) (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)). "This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Id.* (quoting *Goodman*, 494 F.3d at 464). As explained below, such circumstances exist here.

---

[8] Ramsey omits this argument despite this Court's earlier warning that the statute of limitations might bar her fraud claim. In its earlier Memorandum Opinion, the Court explained: "[T]he Court questions whether Ramsey can allege any fraud not barred by the statute of limitations, especially in light of Ramsey's own allegation she discovered the purported fraud in early 2009 and executed the loan modification agreement in late 2009." (Memorandum Opinion 12 n.15, ECF No. 13.)

8

### 2. Virginia's Statute of Limitations Bars Ramsey's Fraud Claims Arising Before February 18, 2013

Virginia's two-year statute of limitations bars Ramsey's fraud claim as it pertains to fraud discovered by Ramsey before February 18, 2013. *See* Va. Code § 8.01-243(A).[9] The fraud cause of action "accrue[s] . . . when such fraud . . . is discovered or by the exercise of due diligence reasonably should have been discovered." Va. Code § 8.01-249(1). In the fraud context, when apparent on the face of the pleadings that the two-year statute of limitations expired prior to the filing of the action, the "burden . . . shift[s] to [the plaintiff] to prove that, despite the exercise of due diligence, he [or she] could not have discovered the alleged fraud within the two-year period before he [or she] commenced the action." *Schmidt v. Household Fin. Corp., II*, 661 S.E.2d 834, 839 (Va. 2008).

Here, the limitations period began to run, at the latest, in early 2009, when Ramsey alleges she discovered BB&T's purported fraud of basing its loan on an appraisal of a two-bedroom property without disclosing the appraisal to her. Ramsey, nonetheless, did not file her Complaint in state court until six years later, on February 18, 2015, four years after the expiration of the statute of limitations on Ramsey's fraud claim. Because the two-year statute of limitations elapsed before Ramsey filed her Complaint, the statute of limitations bars Ramsey's claim as it pertains to fraud discovered before February 18, 2013. However, in light of Ramsey's continuing fraud theory, the Court's inquiry does not end there.

### B. Ramsey's Allegation of Continuing Fraud Fails to State a Claim

Ramsey argues that at least some of her fraud allegations survive because she plausibly alleges that BB&T *repeatedly* demanded payment on a fraudulently obtained mortgage loan.

---

[9] "[E]very action for damages resulting from fraud, shall be brought within two years after the cause of action accrues." Va. Code § 8.01-243(A). Section 8.01-243(A) contains exceptions, none of which apply here.

Because Ramsey's allegations of continuing fraud do not state a claim upon which relief can be granted, Ramsey's claim fails.

Without any citation to Virginia law supporting her theory of continuing fraud, Ramsey relies on what other courts have deemed the "continuing claims" or "continuing wrong" doctrine. In a case cited by both parties, the United States District Court for the District of South Carolina quoted an explanation of the continuing wrong doctrine as follows:

> A limitations period generally begins to run when facts exist that authorize one party to maintain an action against another. However, under the continuing tort or "continuing violation rule," where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date on which the tortious acts cease.
>
> In cases in which the parties plead as a single continuing event a series of distinct events, each of which gives rise to a separate cause of action, the "continuing claims doctrine" operates to save the later arising claims, even if the statute of limitations has lapsed for the earlier events. The continuing claims doctrine does not apply, however, to a claim based on a single distinct event which has ill effects that continue to accumulate over time.

*Gaither v. United States*, No. CA 5:11-953, 2012 WL 3065524, at *7 (D.S.C. July 17, 2012) (quoting 54 C.J.S. Limitations of Actions § 132 (2012)), *report and recommendation adopted*, No. CA 5:11-953, 2012 WL 3065399 (D.S.C. July 27, 2012).

Ramsey's theory of liability rests on the second example listed in *Gaither*. She contends that "BB&T's repeated demands for payment, although predicated on a mortgage loan that was fraudulently obtained, *constitute a series of distinct events or wrongs, each of which gives rise to a separate cause of action having its own associated damages*." (Pl.'s Opp'n Mot. Dismiss First Am. Compl. 13, ECF No. 19 (emphasis added).) Even assuming that the continuing claims

doctrine applies to fraud claims under Virginia law,[10] this artful characterization of Ramsey's claim gives the Court significant pause.

The alleged fraud here stems from BB&T's failure to disclose to Ramsey the proper value of her property when she entered into the mortgage agreement. Ramsey, however, purports to base her continuing fraud theory on BB&T's annual delivery of its Mortgage Loan Coupon Book, which, Ramsey contends, compels her to continually make monthly payments to BB&T on an unlawful mortgage loan. Ramsey suggests that BB&T continues to demand payment on a loan that it obtained, fraudulently, many years prior. Viewed under the framework delineated in *Gaither*, Ramsey continues to base her claim "on a single distinct event [an inflated appraisal that induced Ramsey to enter into a loan agreement] which has ill effects that continue to accumulate over time [repeated demands for payment]." *Gaither*, 2012 WL 3065524, at *7. As such, her fraud claim falls outside of the continuing wrong doctrine, and the statute of limitations bars this action.

Assuming, on the other hand, that the continuing claims doctrine applies in this context, Ramsey's later-arising allegations (those arising within two years of Ramsey's February 18, 2015 filing date) would survive so long as they give rise to a separate cause of action. Of course, at this motion to dismiss stage, Ramsey's continuing fraud allegations would need to, independently, satisfy the pleading standard. They do not.

---

[10] The parties cite cases applying the continuing wrong doctrine only in the context of causes of action stemming from federal statutes. *See, e.g., In re Carrington Gardens Assoc.*, 258 B.R. 622, 633 (E.D. Va. 2001) (limiting the continuing claims doctrine to "cases where no administrative agency has been set up to decide the claim" and to those cases where Congress did not require an agency to make a factual determination or that a plaintiff "exhaust some special procedure or remedy" before a cause of action could accrue (citing *Friedman v. United States*, 310 F.2d 381, 384–85 (1962)).

11

"In Virginia, to succeed on a claim for fraud, a party must show '(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled.'" *Nahigian v. Juno Loudoun, LLC*, 684 F. Supp. 2d 731, 738 (E.D. Va. 2010) (quoting *State Farm Mut. Auto. Ins. Co. v. Remley*, 618 S.E.2d 316, 321 (Va. 2005)). The First Amended Complaint fails to allege, "with particularity," Ramsey's reliance on the false representation of a material fact. Fed. R. Civ. P. 9(b).

Ramsey asserts that she continues to rely on BB&T's fraudulent misrepresentations to her detriment. Ramsey, however, omits from the First Amended Complaint any allegations justifying her continued reliance on misrepresentations she knew to be false in February 2009. Critically, the parties executed a loan modification agreement in late 2009, *after* Ramsey concedes she discovered the actual value of the property.[11] In view of these circumstances, Ramsey cannot state a claim for fraud because she admits that she knew of the property's lesser value when continuing to make payments in supposed reliance on the Mortgage Coupon Book.

Were the Court to permit Ramsey's claim to go forward, it would functionally authorize her to circumvent the applicable statute of limitations by allowing her to import her pre-2009 reliance, before she discovered BB&T's alleged fraudulent misrepresentation. Ramsey's reliance, however, must be tethered to the false representations giving rise to *timely* fraud claims (those occurring within two years of the date she filed the Complaint), and not false representations made at some point in the past. By failing to plausibly plead reliance, Ramsey's continuing fraud allegations cannot state a claim upon which relief can be granted.

---

[11] Although Ramsey suggests that BB&T forced her to enter the loan modification agreement, she states that she knew the alleged fraudulent misrepresentations at the time the parties executed that agreement. Nothing in the First Amended Complaint explains her failure to act, at that time, on what she now contends is a fraud claim.

### C. The Court Will Not Grant Ramsey Leave to Amend

The Court will not grant leave to amend the First Amended Complaint because amendment would be futile. *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) ("A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile."); *Kellogg Brown & Root, Inc.*, 525 F.3d at 376. The Court has already allowed Ramsey to filed one amended complaint. The First Amended Complaint makes clear that Ramsey discovered the purported fraud in early 2009 and executed the loan modification agreement in late 2009. The Court sees no basis to allow Ramsey to pursue a fraud claim brought in 2015 based on misrepresentations known to be false in 2009.

### IV. Conclusion

For the foregoing reasons, the Court will grant BB&T's Second Motion to Dismiss. (ECF No. 16.) An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: 3/17/17